IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KEISHA BUTLER,        ) | |
|     Plaintiff,        ) | |
| ) | |
| v.        ) | Case No. 4:07-CV-01908 |
| ) | |
| FIRST CREDIT, INC.,        ) | |
|     Defendant.        ) | |

DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION.**

Defendant, First Credit, Inc., is licensed to transact deferred presentment transactions within the State of Alabama. A deferred presentment transaction occurs when a consumer enters into a short-term cash advance. A deferred presentment service is a transaction pursuant to a written agreement involving the acceptance of a fee upon accepting a check or authorization to debit a checking account and advancing funds to the checking account holder. §5-18A-2 of the 1975 Code of Alabama, as amended. The check is hold for a period of time prior to payment or deposit. Id..

Defendant entered into a number of deferred presentment service transactions with Plaintiff, Keisha Butler. Upon Ms. Butler's failure to tender payment on a January 19, 2006 transaction, Defendant sued her in the Small Claims Court of Etowah County, Alabama. Ms. Butler counterclaimed asserting the allegations contained within her complaint now pending with this Court. Ms. Butler filed for relief under the Bankruptcy Code. The counterclaims asserted by her in the Etowah County case were removed to the Bankruptcy Court and, later, to this Court.

**II.  STANDARD OF REVIEW.**

Pursuant to Rule 56 summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.Pro. 56(c).  The Court's role in apply this rule is not to weigh the evidence but to determine only whether there is a disputed, material fact for determination at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).  All reasonable inferences must be drawn in favor of the nonmoving party and against the movant.  United States v. Premises Known as 717 South Woodward Street, 2 F.3d 529, 533 (3rd Cir. 1993).  To successfully oppose summary judgment, a nonmoving party may not rest on his pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute.  Celotex Corp. V. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986); Anderson, 477 U.S. at 247-50, 106 S.Ct. At 2510-11.  Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party.  Id. Evidence that merely raises some metaphysical doubt regarding the validity of a material facts I insufficient.  Matsushita Electric Industrial co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  If the party opposing the motion believes that summary judgment is premature, Rule 56(f) requires the party to present by affidavit the reasons why the party is presently unable to submit evidence in opposition to the motion.  Celotex, 477 U.S. at 326, 106 S.Ct. at 2554.

**III.  STATEMENT OF UNDISPUTED FACTS.**

The Defendant, First Credit, Inc. is licensed by the State Banking Department of Alabama as a deferred presentment services provider.  As a part of the application process, First Credit, Inc. was required to submit a "true copy" of its customer agreement.  Exhibit "A".  The State Banking Department reviewed and approved the customer agreement used by the Defendant.  Id.  This approved customer agreement was used on each and every transaction involving the Plaintiff, Keisha Butler.

On October 31, 2005; November 18, 2005; December 9, 2005; December 27, 2005; and January 19, 2006, Plaintiff/Keisha Butler entered into deferred presentment transactions with the Defendant/First Credit, Inc.   Exhibit "B".  Each transaction resulted in the Plaintiff receiving $500.00 cash from the Defendant.  Ms. Butler left a check with the Defendant in the sum of $587.00, which included the short term advance of $500.00 plus an $87.50 fee to be paid to the Defendant.  The contracts signed by the Plaintiff were identical in wording.   Each contract contains within the Federal Truth and Lending Disclosure "SECURITY: No security interest has been given."  Exhibit "B".   The fifth line below the Federal Truth and Lending Disclosure the contract states "You hereby deliver to us at the above address your Check No.           Drawn on                         In the amount of $           (The "Check").  We (a) hereby give you $              In cash, and (b) agree to hold the Check until the presentment date, as set out above, before depositing it.  In consideration for your cashing and delaying the deposit of the Check you agree to pay a service charge in the amount shown in the Finance Charge box above, and to cause the Check to be paid by your bank on the presentment date."  Id.

Plaintiff, Keisha Butler repaid each of the deferred presentment transactions including the fee of $87.50 except the last transaction on January 19, 2006.

During each and every trans with First Credit, Inc., the Plaintiff dealt with employee Debbie Daniels.  Exhibit "B".  Ms. Daniels complied with all requirements of the Deferred Presentment Services Act in each transaction involving Ms. Butler.  Exhibit "C".  Ms. Daniels completed the Check Pro search confirming that Ms. Butler did not have any outstanding deferred presentments prior to entering into a cash advance with her.  Id.  Ms. Daniel did not enter into any transaction with Ms. Butler until her previous cash advance was paid in full.  Id.

**IV.  DEFENDANT IS ENTITLED TO JUDGMENT.**

    1.  First Credit, Inc. did not violate either TILA or Regulation Z.

Counts 1 through 18 of the Plaintiff's complaint alleges that the Defendant violated the Truth in Lending Act (hereinafter "TILA") and the implementing regulation for the TILA, Regulation Z, by failing to clearly and accurately disclose that it took a security interest by taking possession of Plaintiff's check (15 U.S.C. §1638(a)(9)) and by not disclosing said information prior to the extension of credit (15 U.S.C. §1638(b)(1)).  The purpose of the TILA is promoting "'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers."  Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)(quoting 15 U.S.C. §1601).

Before you can have a violation of TILA or Regulation Z, there must be a security interest taken in property of the Plaintiff.  Here, the Plaintiff left her check with the Defendant as part of a deferred presentment transaction pursuant to the Alabama Deferred Presentment statute.  This was not the taking of a security interests by the Defendant.  In Morgan v. Farmers & Merchants Bank, 856 So.2d 811 (Ala. 2003), the Alabama Supreme Court cites the 1975 Code of Alabama §7-3-102(b) that "'Security interest' means an interest in personal property or fixtures which

secures payment or performance of an obligation ..." Morgan at 815.  Here, the check left with the Defendant did not convey a secured interest to the Defendant.  In Sand Mountain Bank v. Albertville Natl. Bank, 442 So.2d 13 (Ala. 1983), *citing* Illinois ex rel. Lignoul v. Continental Illinois Natl. Bank and Trust Co., 536 F.2d 176 (7th Cir.), *cert. denied*, 429 U.S. 871, 97S.Ct. 184, 50 L.Ed.2d 151 (1976), the Alabama Supreme Court held that a  check, card or electronic device, must be recognized as a routine banking function ... The relationship between the bank and its customer is the same ... Just as a transfer of funds by cable or telegraph is in law a check Louie v. Chase Natl. Bank, 42 N.Y.S.2d 205 (Sup.Ct.N.Y.Co. 1943), despite the non-negotiability of the cable, the card here for the purpose of withdrawing cash is a check.  At. 16.  The authorization for electronic debit, the check left with the Defendant, and the contract to pay are in law one check.   By leaving with the Defendant the check, the Plaintiff did not leave anything securing performance of the debt because the debit information and the contract itself already secured the repayment of the debt.

This case is similar to Smith v. Cash Store Mgmt,195 F.3d 325 (7th Cir. 1999).  In Smith the Plaintiff obtained eight deferred presentment loans from the Cash Store.  Each loan agreement contained the statement: "Security.  Your post-dated check is security for this loan." Id.  at 326.  Smith sued alleging TILA and Regulation Z violations for each check due to the Cash Store's failure to disclose in a federal disclosure section any security interests that it was taking.  Id.  The Cash Store responded that it had "security" in the check because the check might facilitate payment because it could deposit the check on the loan due date and if the check bounced, Cash Store could sue Smith under the "bad check" statutes of the state.  Id.at 329.  The Court held:

This argument, standing alone, in incomplete because it confuses "security" with "security interest". True, Cash Store may be in a better position with the check than without it, and in that sense it may regard its loan as more "secure". But this is a broader sense of "security" than that contemplated by Regulation Z. The regulations define "security interest"–which is a term fo art referring to a specific class of transactions–as "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." 12 C.F.R. §226.2(a)(25). Illinois commercial law, in turn, defines it as "an interest in personal property...which secures payment or performance of an obligation." The court holds that

...By creating a security interest through a security agreement, a debtor provides that a creditor may upon default, take or sell the property–or collateral–to satisfy the obligation for which the security interest is given ...("Collateral' means the property subject to a security interest, and includes accounts and chattel paper which have been sold"). Because TILA restricts what information a lender can include in its federal disclosures, the question before us is simply whether the post-dated check makes repayment more likely ("security") but whether it can meet the statutory requirements of "collateral" ("security interest").

At. 329. The court states "Neither the ease recovery in the event of default nor the simple fact that a check is an instrument are sufficient to create a security interest. It is the economic substance of the transaction that determines whether the check serves as collateral." The collateral cannot simply be additional evidence of indebtedness. Id. The term "collateral security" implies the transfer to a creditor of an interest in or a lien on property, or an obligation which furnishes a security in addition to the responsibility of the debtor. Id. The Court holds that the post-dated check does not secure the loan "because it merely restates the promise to pay already contained in the loan agreement." Id. Thus, the post-dated check left by the Plaintiff, Keisha Butler in this case merely restates her promise to pay.

In <u>Hitner v. Diamond State Steel Co.</u>, 176 F. 384, 391-92 (C.C.D.Del. 1910), the court states that the mere duplication of multiplication of a promise to pay or of an acknowledgment of liability to pay a certain sum representing the total real indebtedness to a creditor cannot constitute collateral security.

Here, the post-dated check has on intrinsic value. The Defendant can not process the check through the worthless check division of the Sheriff's Department. The Deferred Presentment Services Act specifies the remedy upon default. And, that remedy is collection through civil court, which the Defendant can do with or without the check. §5-18A-12 sets forth what collection procedures the Defendant may take. And, each of these procedures is independent of the Defendant possessing a check. The possession of the check does not convey on the Defendant any right above and beyond the contract itself.

In <u>Smith</u>, the concurring opinion of Judge Manion recognizes that the Cash Store "was not obligated under TILA to inform Smith that it held this check as security". <u>Id.</u> at 331. Here, the Defendant was not obligated to inform the Plaintiff, Keisha Butler of any security interest in the post-dated check.

The Defendant would be in violation of TILA and Regulation Z if it had erroneously disclosed a the check as security, when it did not, in and of itself, offer anything more to the deferred presentment transaction.

2. <u>First Credit, Inc. did not violate the Alabama Deferred Presentment Services Act. And, Plaintiff lacks standing to bring a cause under the Alabama Deferred Presentment Services Act.</u>

Counts 19 through 36 address the Plaintiff's claims against the Defendant for violations of the Alabama Deferred Presentment Services Act and the Alabama Deceptive trade Practices

Act.

      A. Deferred Presentment Services Act.

The Plaintiff alleges in her complaint that the Defendant entered into deferred presentment transactions with the Plaintiff in violation of §5-18A-13 by entering into transactions despite the Plaintiff having outstanding deferred presentment transactions exceeding $500.00. Yet, Debbie Daniels received confirmation from Check Pro prior to entering into any cash advance agreement with Ms. Butler. Exhibit "B" and "C". Pursuant to §5-18A-13(o), First Credit, Inc. utilized the services of Check Pro, an authorized agent, to confirm Ms. Butler's lack of other deferred presentment transactions in excess of $500.00. Id. Ms. Butler in the contract that she signed agreed that "OTHER DEFERRED DEPOSIT TRANSACTIONS: You hereby certify that the amount advanced to you under this agreement, together with any other amounts currently outstanding, if any, with any other Deferred Presentment provider does not exceed $500." Exhibit "B".

First Credit, Inc. did not require a customer to provide security as set forth in §5-18A-13. The Deferred Presentment Services Act at §5-18A-2 sets forth that a deferred presentment transaction is defined by the acceptance of a check , advancing funds to the checking account holder, and holding the check for a period of time. This is not a violation of law, but what the law requires the Defendant to do in order to make a deferred presentment transaction.

The Defendant at no time "rolled over" any transaction for Plaintiff. But, §5-18A-12© permits the Defendant one roll over with the same customer. The Plaintiff paid each transaction in full before any new transaction was entered into. Exhibit "C", Affidavit of Debbie Daniels. There is nothing in the Alabama Deferred Presentment Services Act to prevent the Defendant from making a new cash advance immediately upon payment of a prior cash advance. This is

what the Defendant did.

The Deferred Presentment Services Act is located at §15-18-1 of the 1975 Code of Alabama, as amended. §5-18A-16 of the Deferred Presentment Services Act addresses violation of the act. Pursuant to §15-18A-16, the Supervisor of the State Banking Department is empowered with the authority to enforce provisions of the Deferred Presentment Services Act. The Supervisor has authority to enter cease and desist orders, require a refund of any fees collected, or order the payment of a civil penalty or not more than $1,000.00 for each transaction in violation of the act. Id. There is no authority within the act for an individual to seek redress for violations of the act. Therefore, the Plaintiff can not continue with her claims against the Defendant for violations of the Deferred Presentment Services Act. Her only recourse under the Act is to seek redress through the Supervisor of the State Banking Department.

B. Alabama Deceptive Trade Practices Act.

The Plaintiff cites that paragraph 27 of the Alabama Deceptive Trade Practices Act, §8-19-5(27), was violated by the Defendant. Paragraph 27 states that it is a violation to engage in any unconscionable, false, misleading or deceptive act or practice in the conduct of trade or commerce. §8-19-5(27) of the 1975 Code of Alabama, as amended. Here, the Defendant has not engaged in any unconscionable act or deceptive or misleading act in the course of trade or commerce. Every aspect of the transaction was fully disclosed in the contract. The transaction involved a legal activity which is regulated by the State of Alabama. The Defendants complied with the regulations of the state.

Jackson v. The Cit Group/Sales Financing, Inc., 630 So.2d 368 (Ala. 1993), requires a showing of substantial evidence that terms of the contract were misrepresented in order to maintain an action under the Alabama Deceptive Trade Practices Act. At 373. Here, there is no

evidence that the Defendant misrepresented any part of the contract and summary judgment is proper.

   3. <u>First Credit, Inc. did not breach its contract with the Plaintiff.</u>

Plaintiff asserts in her complaint in Courts 37 through 54 that Defendant breached the contract with Plaintiff by "breaching the covenant of good faith and fair dealing by knowingly violating the consumer protection laws incorporated in these contracts, as set forth above in the Alabama Deferred Presentment Services Act described in Courts 19 through 36". Here, the Defendant complied with the requirements of the Alabama Deferred Presentment Services Act. The Act is only enforceable by the Supervisor of the Department of Banking and not by the Plaintiff. The Defendant set forth all aspects of the contracts in writing. There is no bad faith in these contracts. And, there was no knowingly violation of any law. The Defendant presented its consumer agreement to the State Banking Department prior to obtaining its license. Exhibit "A". That agreement was found to be in compliance with the State Banking Department and they issued a license to the Defendant. Any violation, would be unknowing on the Defendant's part.

   4. <u>First Credit, Inc. Has not committed negligence or wantonness per se.</u>

Plaintiff states in Counts 55 through 72 that the Defendant negligently or wantonly "violated the statutory duties imposed upon it for each contract, as st forth in the Alabama Deferred Presentment Services Act described in Count 19 through 36". The Defendant, as set forth above, has not violated any requirement of the Deferred Presentment Services Act either negligently or wantonly. And, the Plaintiff does not have standing to redress pursuant to the Alabama Deferred Presentment Services Act. The Supervisor of the State Banking Authority is the only person empowered with said standing. If the legislature had intended to allow the

Plaintiff redress under the statute it could have easily have done so.

**V.  CONCLUSION.**

For the reasons set forth above, Defendant, First Credit, Inc. Requests that the Court grant its Motion for Summary Judgment and award them all further relief that is equitable and proper.

This the 30th day of July, 2008.

/s/ C. Rena Webb
_____
C. Rena Webb, WEB039, Attorney for Defendant
300 Bob Wallace Avenue, Huntsville, AL 35801
(256) 539-2121
www.ladylaw67@earthlink.net

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Wilson Webb, PO Box 8169, Gadsden, AL 35902, via US Mail, postage prepaid, this the 30th day of July, 2008.

/s/ C. Rena Webb
_____
C. Rena Webb