FILED

2008 Nov-13  PM 07:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| **KEISHA BUTLER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:07-cv-1908-UWC** |
| **FIRST CREDIT, INCORPORATED,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action involves a "payday loan" transaction between Plaintiff  Keisha Butler and Defendant First Credit, Incorporated ("First Credit").  Plaintiff asserts federal claims against First Credit under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq*.("TILA"), and state law claims under the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5 *et seq*.("DTPA"), the Alabama Deferred Presentment Services Act, Ala. Code § 5-18A-1 ("DPSA").  She also asserts  state law claims for breach of contract and negligence.

First Credit seeks  summary judgment on all claims.  For the reasons set forth herein, the Court concludes that summary judgment is due to be granted on the TILA and breach of contract claims, and denied on the remaining claims.

## A. The Undisputed Facts

A "payday loan" is a short-term small loan handled with a minimum of paperwork; the loan agreement is [generally] a single sheet of paper, and the borrower receives cash within minutes of applying. The rate of interest is high, and the lender typically requires the borrower to write a check that can be submitted for payment after the borrower's next schedule payday.

*Hahn v. McKenzie Check Advance of Ill., LLC*, 202 F.3d 998, 999 (7th Cir. 2000). In Alabama, such transactions are governed by the DPSA., Ala. Code § 5-18A-1, *et seq*.

Plaintiff entered into at least four separate deferred presentment transactions with First Credit (d/b/a "Quik Cash"), in which she received $500.  As a part each transaction, Plaintiff left a check with First Credit in the sum of $587.50, which included fees.  All of the transactions were handled by First Credit employee Debbie Daniels.  Daniels says that each transaction with Plaintiff was consummated  only after  Daniels had verified that Plaintiff had no unsatisfied prior advances from First Credit.  Daniels also says that, prior to each transaction, she completed a search using a third-party vendor to confirm that Plaintiff did not have any outstanding deferred presentment transactions with other Alabama vendors.

For each transaction with First Credit, Plaintiff signed a contract which contained, *inter alia*, the following provisions:

> SECURITY: No security interest has been given.
>
> . . . .
>
> We (a) hereby give you $500 in cash, and (b) agree to hold the Check until the presentment date, as set out above, before depositing it.  In consideration for our cashing and delaying the deposit of the Check you agree to pay a service charge in the amount shown in the Finance Charge box above, and to cause the Check to be paid by your bank on the presentment date.

(Doc. 16, Def.'s Ex. B.)  According to First Credit, the loan form which contains these provisions has been approved by the Alabama State Banking Department.

Plaintiff repaid all but the last loan which she secured on January 19, 2006.

In a notice to Plaintiff about the unsatisfied loan, First Credit indicated it would initiate legal action if she continued to deprive the company of its "security interest." (Doc. 19, Pl.'s Ex. E.)  Because Plaintiff did not re-pay the loan, First Credit filed a civil action against her in the Alabama small claims court.  In its complaint, First Credit contends that Plaintiff's default deprived First Credit of its "security interest." (*Id*. at Ex. B.)

Plaintiff ultimately filed bankruptcy and filed a counterclaim against First Credit. That counterclaim is the present action.

### B. Plaintiff's Claims

In her complaint, Plaintiff contends First Credit violated the TILA by failing to disclose that the company held a security interest in her check.  She also contends

First Credit violated the Alabama Deceptive Trade Practices Act and the Alabama Presentment Services Act by: (1) failing to investigate whether she had outstanding deferred presentment transactions with other vendors at the time she applied for a loan from First Credit; (2) renewing or "rolling over" loan contracts with First Credit more than two consecutive times; and (3) engaging in deceptive and unfair practices by failing to comply with the provisions of the Alabama Statutes.  Finally, Plaintiff asserts claims for negligence and breach of the covenant of good faith as it relates to the contractual agreements.

## B. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)**.**

On a motion for summary judgment, the Court must view the facts in the light most favorable to the non-movant.  *DeJulio v. Georgia*, 276 F.3d 1244, 1258 (11th Cir. 2001).

## C. ANALYSIS

### 1.  The TILA Claims

"TILA requires creditors to disclose accurately any security interest taken by the lender and to describe accurately the property in which the interest is taken." *Smith v. The Cash Store Magmt., Inc.*, 195 F.3d 325, 328 (7th Cir. 1999) (citing 15 U.S.C. § 1633; 12 C.F.R. § 226.18).

Relying on the complaint filed against her by First Credit, Plaintiff contends that First Credit violated the TILA disclosure requirements by failing to accurately disclose that it held a security interest in her check. First Credit counters that Butler's check did not constitute a "security interest."[1]

TILA's Regulation Z defines a "security interest" as "an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law." 12 C.F.R. § 226.2(a)(25). Under Alabama law, a

> "[s]ecurity interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. "Security interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9A [, which relates to secured transactions].

Ala. Code § 7-1-201(35).

Relying on *Sand Mountain Bank v. Albertville National Bank*, 442 So. 2d 13,

---

[1] The Court notes that First Credit has taken inconsistent positions on this issue in state court and this court. The Court will not invoke the doctrine of estoppel, although it is strongly tempted to do so.

16 (Ala. 1983), First Credit argues that Butler's check was not a security interest because Butler "did not leave anything securing performance of the debt." (Doc. 13, Def,'s Summ. J. Br. at 5.) Rather, the "debit information [collected from Butler and the loan] contract itself already secured the repayment of the debt." *See id*.

First Credit's reliance on *Sand Mountain Bank* is misplaced because neither the facts nor the reasoning in that case are on point. *Sand Mountain* involved the question of whether a bank's processing of an ATM withdrawal constituted "the payment of checks" under Alabama law. 442 So. 2d at 15-16. The Alabama Supreme Court answered that question in the affirmative, reasoning that an ATM transaction was the equivalent of writing a check on the customer's account. *Id*. at 16 (citing *Illinois ex rel. Lignoul v. Cont'l Ill. Nat'l Bank and Trust Co.*, 535 F.2d 176 (7th Cir. 1976)). Although the ATM card is not negotiable, the Court noted that "the foundation of the relationship between the bank and its customer is the former's agreement to pay out the customer's money according to the latter's order. There are many ways in which an order may be given and one of late is by computer record." *Id*. (quoting *Illinois ex rel.*, 536 F.2d at 178). Thus, *Sand Mountain* involved a customer's directive (via ATM or check) to the entity holding the res (i.e., the Bank) to hand the res back over to the customer. In other words, no security interest was involved or even necessary.

In contrast, the instant case involves a promise to pay, in the form of a loan agreement, along with a check and debit information.  In most instances, these circumstances fall squarely within the Alabama Uniform Commercial Code's definition of a security interest because, in addition to the promise, Butler gave First credit an "interest in personal property . . . . which secure[d] payment or performance of an obligation." Ala. Code § 7-1-201(35).  While the "interest in personal property" was intangible, the Alabama Code clearly explains that a "security interest" includes a "payment intangible."  *Id*.  In other words, a security interest includes "a general intangible under which the account debtor's principal obligation is a monetary obligation." Ala. Code. §§ 7-9A-102(61);  7-1-201(35).

Although the Eleventh Circuit Court of Appeals has not addressed this issue, the Seventh Circuit Court has recognized that checks to payday loan lenders constitute a security interest under TILA, thereby requiring disclosure of this interest on the loan documents.  *See Smith v. The Cash Store Mgmt., Inc.*, 195 F.3d 325, 330 (7th Cir. 1999) (noting that the holder of a loan agreement and a  post-dated check has more than a promise to pay, but instead the holder has remedies available to him or her that a holder of a loan agreement does not have) (*Hahn v. McKenzie Check Advance of Illinois, LLC*, 202 F.3d 998, 999 (7th Cir. 2000) ("[T]he check creates remedies and entitlements independent of the note).

The problem with these Seventh Circuit cases, however, is that they involved Illinois state law statutes that differ from the state law statutes at issue in the instant case. In addition to the Uniform Commercial Code, Alabama has also enacted a "Deferred Presentment Services Act."  Ala. Code § 5-18A-1.  Under this statute, it appears that checks used in deferred presentment transactions do not constitute a "security interest."  Specifically, the statute defines deferred present transactions as:

> A transaction pursuant to a written agreement involving the following combination of activities in exchange for a fee:
>
> > a. Accepting a check or authorization to debit a checking account and, in connection with that acceptance, advancing funds to the checking account holder.
> >
> > b. Holding the check or authorization to debit checking account for a period of time prior to payment or deposit.

Ala. Code § 5-18A-2(3).  Thus, the statute contemplates that the lender will hold the check in connection with advancing the funds.  *See id.*  Yet, the statute goes on to prohibit a deferred presentment vendor from "requr[ing] a customer to provide security for the transaction or require[ing] the customer to provide a guaranty from another person."  Ala. Code § 5-18A-14(k).  Taking these two provisions together, a check or debit authorization cannot constitute a "security interest" because the statute contemplates that the vendor will hold the customer's check/debit information, but at the same time prohibits the vendor from taking a security interest from the

customer.  Accordingly, First Credit's motion for summary judgment is due to be granted on the TILA claim.

## 2. The DPSA / DTPA Claims

Plaintiff claims that First Credit violated Alabama's DPSA by, among other things: (1) requiring her to provide security for the loan transaction;  (2) failing to reasonably investigate whether she had outstanding deferred presentment loans at the time she contracted with First Credit; (3) engaging in unfair and deceptive practices. *See* Ala. Code § 5-18A-13(a); 5-18A-13(j); 5-18A-13(k).  In response, First Credit contends that it did not violate DPSA because: (1) it verified that Plaintiff had no outstanding deferred presentment transactions exceeding $500 prior to extending her a loan; and (2) it did not roll over an existing transaction for Plaintiff.

Taking the facts in the light most favorable to Plaintiff, who disputes these contentions made by First Credit, a genuine issue of material fact exists with respect to whether First Credit did indeed follow the provisions of the statute relating to outstanding transactions and roll over transactions. (*See* Doc. 19, Pl.'s Summ J. Brief at Ex. 1, Butler Aff. ¶ 4.)

First Credit  argues that the DPSA ("the Presentment Act") does not provide for a private cause of action. It notes that while the Presentment Act specifically preserves the rights of "customers" to go forward with lawsuits pending on or before

June 20, 2003, the effective date of the statute, there is no mention of a civil cause of action after that date.  *See* Ala. Code § 5-18A-22.  Rather, the statute provides that "[a]ny person aggrieved by the conduct of a licensee" has the right to "file a written complaint with the supervisor who may investigate the complaint."  Ala. Code § 5-18A-18.  The statute also provides for criminal penalties.  Because the statute does not specifically provide for civil remedies by a consumer, First Credit argues that Plaintiff may not pursue a private cause of action under the Presentment Act.

The Court rejects First Credit's argument.  First, in the case it principally relies on, *Allen v. Delchamps*, 624 So. 2d 1065, 1067-68 (Ala. 1993),  the Alabama Supreme Court simply held that the plaintiff could not pursue a private cause of action under the Food Drug and Cosmetic Act because the statute <u>specifically</u> limited enforcement actions to those brought by the United States.  *Id.*

Second, under Alabama law, "whenever regulation and protection are the goal of a statute, contracts made in derogation of that statute are null, void, and unenforceable." *Derico v. Duncan*, 410 So. 2d 27, 31 (Ala. 1982), *abrogated on other grounds by Farmer v. Hypo Holdings, Inc.*, 675 So. 2d 387, 389 (Ala. 1996).  In the past, the Alabama Supreme Court has applied this rule to statutes that provided criminal penalties, but did not specifically allow for a private cause of action.  *See id.* This Court sees no reason why the Alabama Supreme Court would view the

Presentment Act differently.

Thus, Plaintiff is not barred from seeking to have her loan declared void and unenforceable under DPSA.

Moreover, Plaintiff has a viable cause of action under the Alabama DTPA, which specifically provides for private civil actions against an entity that engages in "unconscionable, false, misleading or deceptive act[s] or practice[s] in the conduct of trade or commerce." [2] Ala. Code § 8-19-5(27).  Inasmuch as Plaintiff claims that First Credit failed to comply with its obligations under the Presentment Act, then she has a viable claim that First Credit engaged in "unconscionable, false, and misleading" practices in derogation of the DTPA.

### 3.  The Negligence Claim Claim

Inasmuch as the DPSA  creates a duty of care , and a liberal version of the undisputed facts may lead a reasonable factfinder to conclude that First Credit was negligent in its dealings with Plaintiff, summary judgment is not appropriate.

### 4. The Breach of Contract Claim

Based on the undisputed facts, First Credit is entitled to judgment as a matter of law on Plaintiff's  breach of contract claim. There is no evidence that First Butler

---

[2]  "Trade or commerce" includes "performance of any service."  Ala. Code § 8-19-3(8).

violated either of its contracts with Plaintiff. Insofar as Plaintiff claims that First Credit breached its duty of good faith and fair dealing, she has cited the Court to no Alabama authority recognizing this doctrine outside the insurance context.

### Conclusion

By separate order, First Credit's motion for summary judgment will be granted on Plaintiff's TILA and breach of contract claims. In all other respects, the motion will be denied.

_____
U.W. Clemon
United States District Judge